**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | |
|---|---|
| JOSHUA KEENAN, Individually and for Others Similarly Situated | Case No. 2:25-cv-461 |
| v. | Jury Trial Demanded |
| STINGRAY PRESSURE PUMPING LLC | FLSA Collective Action<br>Rule 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Joshua Keenan (Keenan) brings this class and collective action to recover unpaid wages and other damages from Stingray Pressure Pumping LLC (Stingray).

2. Stingray employed Keenan as one of its Hourly Employees (defined below), including in Westmoreland County, Pennsylvania.

3. Keenan and the other Hourly Employees regularly work more than 40 hours a workweek.

4. But Stingray does not pay Keenan and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 a workweek.

5. Instead, Stingray pays Keenan and the other Hourly Employees non-discretionary bonuses that it fails to include in these employees' regular rates of pay for overtime purposes (Stingray's "bonus pay scheme").

6. Likewise, Stingray pays Keenan and the other Hourly Employees "per diems," but only for completed shifts, which Stingray fails to include in their regular rates of pay for overtime purposes (Stingray's "per diem pay scheme").

7. Stingray's bonus pay scheme and per diem pay scheme violate the Fair Labor Standards Act (FLSA) and Pennsylvania Minimum Wage Act (PMWA) by failing to compensate Keenan and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 each workweek.

8. Likewise, Stingray's bonus pay scheme and per diem pay scheme violate the Pennsylvania Wage Payment and Collection Law (WPCL) by depriving Keenan and the other Hourly Employees of earned overtime wages on their regular paydays and/or following the termination of their employment.

## JURISDICTION & VENUE

9. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

10. This Court also has supplemental jurisdiction of the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

11. This Court has general personal jurisdiction over Stingray because it is a limited liability company registered to do business in the Commonwealth. *See Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 134 (2023); *see also* 42 PA. CONS. STAT. § 5301.

12. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in Westmoreland County, Pennsylvania, which is in this District and Division. 28 U.S.C. § 1391(b)(2).

13. Specifically, Stingray employed Keenan pursuant to its bonus pay scheme and per diem pay scheme in Westmoreland County.

**PARTIES**

14. Stingray employed Keenan as an equipment operator and electronics technician from approximately May 2022 until September 2023 and as an Electronics Tech II from September 2024 until February 2025.

15. Stingray paid Keenan by the hour.

16. Throughout his employment, Stingray paid Keenan under its bonus pay scheme and per diem pay scheme.

17. Keenan's written consent is attached as **Exhibit 1**.

18. Keenan brings this class and collective action on behalf of himself, and other Stingray employees paid under its bonus pay scheme and/or per diem pay scheme.

19. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly Stingray employees who were paid a bonus and/or per diem during the last three years through final resolution of this action (the "FLSA Collective Members").**

20. The putative Pennsylvania class of similarly situated employees is defined as:

> **All hourly Stingray employees who worked in, or were based out of, Pennsylvania[1] who were paid a bonus and/or per diem during the last 3 years through final resolution of this action (the "Pennsylvania Class Members").**

---

[1] The PMWA and WPCL apply to Pennsylvania workers, regardless of the state in which the work is performed. *Truman v. DeWolff, Boberg & Assocs., Inc.*, No. 07-01702, 2009 WL 2015126, at *2 (W.D. Pa. July 7, 2009) ("In light of the FLSA's explicit recognition that states may offer greater protections to its employees than the FLSA, we are reluctant to find an unstated foreign-work exemption in the PMWA based solely on the fact that the FLSA contains such an exemption."). Courts apply a five-factor test for purposes of the PMWA and WPCL to determine whether workers are based in Pennsylvania, which include (1) employer's headquarters; (2) employee's physical presence working in Pennsylvania; (3) extent of employee's contact with Pennsylvania Employer, i.e., reporting, direction, supervision, hiring, assignment, and termination; (4) employee's residence; and (5) employee's ability to bring her claim in another forum. *See Matthews v. BioTelemetry, Inc.*, No. 18-561, 2018 WL 3648228, at *3 (E.D. Pa. July 31, 2018).

21. The FLSA Collective Members and the Pennsylvania Class Members are collectively referred to as the "Hourly Employees."

22. Stingray is a Delaware limited liability company headquartered in Oklahoma City, Oklahoma.

23. Stingray may be served with process through its registered agent: **Corporation Service Company, 5235 North Front Street, Harrisburg, Pennsylvania 17110.**

## FLSA COVERAGE

24. At all relevant times, Stingray was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

25. At all relevant times, Stingray was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

26. At all relevant times, Stingray was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

27. At all relevant times, Stingray had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

28. At all relevant times, Keenan and the other Hourly Employees were Stingray's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

29. At all relevant times, Keenan and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

30. Stingray is an oil and gas company that claims it "sets the standard in high-pressure hydraulic fracturing solutions designed for today's complex unconventional resource plays."[2]

31. To meet its business objectives, Stingray employs workers, including Keenan and the other Hourly Employees.

32. For example, Stingray employed Keenan as an equipment operator and electronics technician, including in Westmoreland County, Pennsylvania and Ohio from approximately May 2022 until September 2023 and again from September 2024 until February 2025.

33. As an equipment operator, Keenan's job duties included pump maintenance, running the telehandler to move equipment on the pads, and rigging-in/rigging-out.

34. As an electronics technician, Keenan's duties included preventative maintenance, running cables, setting up databands, and attending to radio systems maintaining electronics for the frac pumps.

35. Throughout his employment, Keenan has regularly worked more than 40 hours a workweek.

36. Indeed, Keenan typically worked approximately 8 to 12+ hours a day for 7 days a week (56 to 84+ hours a workweek), two weeks on followed by one week off.

37. Stingray paid Keenan approximately $20 an hour.

38. Likewise, the other Hourly Employees typically worked approximately 8 to 12+ hours a day for 7 days a week (56 to 84+ hours a workweek), two weeks on followed by one week off.

39. And Keenan and the other Hourly Employees record their "on the clock" hours worked via Stingray's Paycom timekeeping system.

---

[2] https://www.mammothenergy.com/oilfield-services/pressure-pumping-services/ (last visited March 25, 2025).

40. At the end of each pay period, Keenan and the other Hourly Employees receive wages from Stingray that are determined by common systems and methods that Stingray selects and controls.

41. But Stingray does not pay Keenan and the other Hourly Employees at the required overtime rate for all hours worked in excess of 40 a workweek.

42. Instead, Stingray pays Keenan and the other Hourly Employees under its bonus pay scheme and per diem pay scheme.

43. Specifically, under its bonus pay scheme, Stingray pays Keenan and the other Hourly Employees non-discretionary bonuses, including job premium bonuses, that it fails to include in these employees' regular rates of pay for the purpose of calculating their overtime rates of pay.

44. For example, during the pay period ending February 19, 2025, Stingray paid Keenan an $822 non-discretionary "Job Premium" bonus that it did not include in his regular rate of pay for overtime purposes:

|  | Rate | Hours/Units | Current Period | Year To Date |
|---|---|---|---|---|
| **Earnings** | | | | |
| Regular | 20.00 | 61.35 | 1227.00 | 5677.00 |
| Overtime | 30.00 | 48.11 | 1443.30 | 6554.40 |
| Holiday | 20.00 | 0.00 | 0.00 | 640.00 |
| Job Premium | | | 822.00 | 2328.00 |
| Off Week Regular Hours | 20.00 | 18.65 | 373.00 | 959.00 |
| Retro Fixed | | | 172.47 | 475.07 |
| **Gross** | | 128.11 | 4037.77 | 16633.47 |

45. Thus, under its bonus pay scheme, Stingray does not pay Keenan and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 a workweek.

46. And Stingray pays Keenan and the other Hourly Employees under its per diem pay scheme.

47. Specifically, under its per diem pay scheme, Stingray pays Keenan and the other Hourly Employees "per diems" based on completed shifts and unrelated to any expenses incurred.

48. Stingray categorized "per diem" wages as part of Keenan's "Starting Salary" in his offer letter:

| Starting Salary | $20.00/hour Non-Exempt; $30 Per Diem (for fully completed shift on location) |

49. Stingray fails to include these "per diems" in Keenan's and the other Hourly Employees' regular rates of pay for the purpose of calculating their overtime rates of pay.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

50. Keenan brings his claims as a class action under Pennsylvania law pursuant to FED. R. CIV. P. 23 and a collective action under Section 216(b) of the FLSA on behalf of himself and the other Hourly Employees.

51. Like Keenan, the other Hourly Employees are victimized by Stingray's bonus pay scheme and per diem pay scheme.

52. Other Hourly Employees worked with Keenan and indicated they were paid in the same manner under Stingray's bonus pay scheme and per diem pay scheme.

53. Based on his experience with Stingray, Keenan is aware Stingray's bonus pay scheme and per diem pay scheme were imposed on other Hourly Employees.

54. The Hourly Employees are similarly situated in the most relevant respects.

55. Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked.

56. Therefore, the specific job titles or locations of the Hourly Employees do not prevent class or collective treatment.

57. Rather, Stingray's bonus pay scheme and per diem pay scheme render Keenan and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rate for all overtime hours worked.

58. Stingray's records reflect the number of hours the Hourly Employees recorded working "on the clock" each week.

59. Stingray's records also show it paid the Hourly Employees non-discretionary bonuses and "per diems" it failed to include in their regular rates of pay for the purpose of calculating their overtime rates of pay.

60. The back wages owed to Keenan and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

61. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Stingray's records, and there is no detraction from the common nucleus of liability facts.

62. Therefore, the issue of damages does not preclude class or collective treatment.

63. Keenan's experiences are therefore typical of the experiences of the other Hourly Employees.

64. Keenan has no interests contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

65. Like each Hourly Employee, Keenan has an interest in obtaining the unpaid wages owed under Pennsylvania and federal law.

66. Keenan and his counsel will fairly and adequately protect the interests of the Hourly Employees.

67. Keenan retained counsel with significant experience in handling complex class and collective action litigation.

68. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Stingray will reap the unjust benefits of violating the FLSA and Pennsylvania law.

69. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

70. Indeed, the multiplicity of actions would create hardship to the Hourly Employees, the Court, and Stingray.

71. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

72. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

73. Among the common questions of law and fact are:

   a. Whether Stingray paid the Hourly Employees non-discretionary bonuses;

   b. Whether Stingray paid the Hourly Employees "per diems" labeled as "Other Pay";

   c. Whether Stingray failed to include non-discretionary bonuses and/or per diems in calculating the Hourly Employees' regular rates of pay;

   d. Whether Stingray failed to pay the Hourly Employees overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked;

   e. Whether Stingray's decision not to pay the Hourly Employees overtime wages at the required rate—based on all remuneration—for all overtime hours worked was made in good faith; and

f.  Whether Stingray's violations were willful?

74. As part of its regular business practices, Stingray intentionally, willfully, and repeatedly violated the FLSA and Pennsylvania law with respect to Keenan and the other Hourly Employees.

75. Stingray's bonus pay scheme and per diem pay scheme deprived Keenan and the other Hourly Employees of the overtime wages at the required premium rate—based on all remuneration—they are owed under federal and Pennsylvania law.

76. There are many similarly situated Hourly Employees who have been denied overtime pay at the required rate—based on all remuneration—in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

77. The Hourly Employees are known to Stingray, are readily identifiable, and can be located through Stingray's business and personnel records.

**STINGRAY'S VIOLATIONS WERE WILLFUL, UNREASONABLE, AND NOT THE RESULT OF A *BONA FIDE* DISPUTE**

78. Stingray knew it employed Keenan and the other Hourly Employees.

79. Stingray knew it was subject to the PMWA's and FLSA's overtime provisions.

80. Stingray knew the PMWA and FLSA required it to pay non-exempt employees, including Keenan and the other Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

81. Stingray knew it was subject to the WPCL.

82. Stingray knew the WPCL required it to pay employees, including its Hourly Employees, all wages (including overtime) earned on their regular paydays and following the termination of their employment.

83. Stingray knew Keenan and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because it recorded these employees' "on the clock" hours worked via its timekeeping system.

84. Stingray knew Keenan and the other Hourly Employees were non-exempt employees entitled to overtime pay.

85. Stingray knew it paid Keenan and the other Hourly Employees non-discretionary bonuses.

86. Stingray knew these non-discretionary bonuses were required to be, but were not included in Keenan's and the other Hourly Employees' regular rates of pay for overtime purposes.

87. Stingray knew it paid Keenan and the other Hourly Employees "per diems."

88. Stingray knew these per diems were required to be, but were not included in Keenan's and the other Hourly Employees' regular rates of pay for overtime purposes.

89. And Stingray knew the PMWA and FLSA required it to pay Keenan and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

90. Stingray's failure to pay Keenan and the other Hourly Employees overtime at the required rate—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

91. Stingray's refusal to pay its Hourly Employees earned wages for all hours worked on their regular paydays and following the termination of their employment was unreasonable.

92. Stingray's failure to pay its Hourly Employees their earned wages was not the result of a *bona fide* dispute.

93. Stingray knew its conduct violated the FLSA, PMWA, and WPCL.

94. Stingray knowingly, willfully, and/or in reckless disregard of applicable federal and Pennsylvania law carried out its unlawful bonus pay scheme and per diem pay scheme that deprived Keenan and the other Hourly Employees of overtime wages at the required rate of pay—based on all remuneration—for all hours worked after 40 a workweek.

95. Indeed Stingray has previously been sued for failing to pay required wages under the FLSA and analogous state wage laws, including for the same or similar bonus pay scheme and per diem pay scheme at issue here. *See e.g.*, *Crigler, et al. v. Stingray Pressure Pumping, LLC*, No. 2:15-cv-02324 (S.D. Ohio); *Crosby v. Stingray Pressure Pumping, LLC*, No. 2:17-cv-00080 (S.D. Ohio); *Lackie v. Stingray Pressure Pumping LLC*, No 2:17-cv-00083 (S.D. Ohio).

## COUNT I
### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

96. Keenan brings his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

97. Stingray violated, and is violating, the FLSA by employing non-exempt employees such as Keenan and the other FLSA Collective Members in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

98. Stingray's unlawful conduct harmed Keenan and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

99. Accordingly, Stingray owes Keenan and the other Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

100. Because Stingray knew or showed reckless disregard for whether this bonus pay scheme and per diem pay scheme violated the FLSA, Stingray owes Keenan and the other FLSA Collective Members these wages for at least the past 3 years.

101.  Stingray is also liable to Keenan and the other FLSA Collective Members for an amount equal to all their unpaid overtime wages as liquidated damages.

102.  Finally, Keenan and the other FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II
### FAILURE TO PAY OVERTIME WAGES UNDER THE PMWA
### (PENNSYLVANIA CLASS)

103.  Keenan brings his PMWA claim as a class action on behalf of himself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

104.  Stingray's conduct violated the PMWA (43 PA. STAT. §§ 333.101, *et seq.*).

105.  At all relevant times, Stingray was subject to the PMWA because Stingray was (and is) an "employer" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(g).

106.  At all relevant times, Stingray employed each Pennsylvania Class Member as its covered "employees" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(h).

107.  The PMWA requires employers, like Stingray, to pay non-exempt employees, including Keenan and the other Pennsylvania Class Members, overtime at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek. 43 PA. STAT. § 333.104(c); *see* 34 PA. CODE §§ 231.41-43.

108.  Stingray violated, and is violating, the PMWA by employing non-exempt employees (Keenan and the other Pennsylvania Class Members) for workweeks in excess of 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek. *See* 43 PA. STAT. § 333.104(c); *see also* 34 PA. CODE §§ 231.41-43.

109.  Stingray's unlawful conduct harmed Keenan and the other Pennsylvania Class Members by depriving them of the overtime wages they are owed.

110. Accordingly, Stingray owes Keenan and the other Pennsylvania Class Members the difference between the rate actually paid and the required overtime rate plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 333.113.

111. Finally, Keenan and the other Pennsylvania Class Members are entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* 43 PA. STAT. § 333.113.

## COUNT III
### FAILURE TO PAY EARNED WAGES UNDER THE WPCL
### (PENNSYLVANIA CLASS)

112. Keenan brings his WPCL claim as a class action on behalf of himself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

113. Stingray's conduct violates the WPCL. 43 PA. STAT. §§ 260.1, *et seq*.

114. At all relevant times, Stingray was subject to the WPCL because Stingray was (and is) an "employer" within the meaning of the WPCL. *See* 43 PA. STAT. § 260.2a.

115. At all relevant times, Stingray employed Keenan and each Pennsylvania Class Member as its covered "employees" within the meaning of the WPCL.

116. The WPCL requires employers, like Stingray, to pay employees, including Keenan and the other Pennsylvania Class Members, all wages (including overtime) earned, due, and owing to them on their regular payday(s) and following the termination of their employment. 43 PA. STAT. §§ 260.3 and 260.5.

117. Stingray violated, and is violating, the WPCL by depriving the Pennsylvania Class Members of all wages earned, due, and owing to them on their regular paydays and/or following the termination of their employment. *See* 43 PA. STAT. §§ 260.3 and 260.5.

118. Keenan's and the other Pennsylvania Class Members' earned wages have remained unpaid for more than 30 days from the date they were earned, due, and payable.

119. Stingray's unlawful conduct harmed Keenan and the other Pennsylvania Class Members by depriving them of the earned wages they are owed.

120. Stingray's failure to pay Keenan and the other Pennsylvania Class Members earned wages was not the result of a *bona fide* dispute.

121. Rather, Stingray knowingly failed to pay earned wages to Keenan and the other Pennsylvania Class Members.

122. Accordingly, Stingray owes Keenan and the other Pennsylvania Class Members their unpaid earned wages plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 260.9a.

123. Stingray also owes Keenan and the other Pennsylvania Class Members liquidated damages in an amount equal to 25% of their unpaid earned wages. *See* 43 PA. STAT. § 260.10.

124. Finally, Keenan and the other Pennsylvania Class Members are entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* 43 PA. STAT. § 260.9a(f).

## JURY DEMAND

125. Keenan demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Keenan, individually and on behalf of the other Hourly Employees, seeks the following relief:

    a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Hourly Employees allowing them to join this action by filing a written notice of consent;

    b. An Order designating this action as a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing Keenan and his counsel to represent the interests of the Hourly Employees;

d. An Order finding Stingray liable to Keenan and the other FLSA Collective Members for unpaid overtime wages owed under the FLSA plus an equal amount as liquidated damages;

e. An Order finding Stingray liable to Keenan and the other Pennsylvania Class Members for unpaid overtime wages owed under the PMWA plus all available penalty wages;

f. An Order finding Stingray liable to Keenan and the other Pennsylvania Class Members for unpaid earned wages owed under the WPCL plus liquidated damages in an amount equal to 25% of their unpaid wages;

g. A Judgment against Stingray awarding Keenan and the Hourly Employees all their unpaid wages, liquidated damages, statutory damages, and any other penalties available under the FLSA, PMWA, and WPCL;

h. An Order awarding attorney's fees, costs, and expenses;

i. Pre- and post-judgment interest at the highest applicable rates; and

j. Such other and further relief as may be necessary and appropriate.

| | |
|---|---|
| Date: April 3, 2025 | Respectfully submitted, |
| | **BRUCKNER BURCH PLLC** |
| | By: */s/Richard J. (Rex) Burch*<br>Richard J. (Rex) Burch, Esquire<br>TX Bar No. 24001807<br>11 Greenway Plaza, Suite 3025<br>Houston, Texas 77046<br>Tel: (713) 877-8788<br>Fax: (713) 877-8065<br>rburch@brucknerburch.com |
| | Michael A. Josephson, Esquire<br>PA ID No. 308410<br>Andrew W. Dunlap, Esquire<br>TX Bar No. 24078444<br>**JOSEPHSON DUNLAP LLP**<br>11 Greenway Plaza, Suite 3050<br>Houston, Texas 77046<br>Tel: (713) 352-1100<br>Fax: (713) 352-3300<br>mjosephson@mybackwages.com<br>adunlap@mybackwages.com |
| | Joshua P. Geist, Esquire<br>PA ID No. 85745<br>William F. Goodrich, Esquire<br>PA ID No. 30235<br>**GOODRICH & GEIST, PC**<br>3634 California Ave.<br>Pittsburgh, Pennsylvania 15212<br>Tel: (412) 766-1455<br>Fax: (412) 766-0300<br>josh@goodrichandgeist.com<br>bill@goodrichandgeist.com |
| | **ATTORNEYS FOR KEENAN AND THE HOURLY EMPLOYEES** |